# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH L. MARSHALL,<br><br>                                        Plaintiff,<br><br>       vs.<br><br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security<br><br>                                        Defendant. | CASE NO. 08-CV-1735 L (WMc)<br><br>**REPORT AND RECOMMENDATION: (1) TO GRANT IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) TO DENY DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND (3) REMAND FOR FURTHER PROCEEDINGS** |

## I.

## INTRODUCTION

This matter is before the Court on cross-motions for summary judgment.  Plaintiff Deborah L. Marshall brings her motion under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g)[1], seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act.  Plaintiff asks the Court to reverse the Commissioner's decision, and to order initiation of benefits pursuant to the

---

[1] "Any individual, after any final decision of the Commissioner of Social Security made afer a hearing to which he was a party . . . may obtain judicial review of such decision by a civil action . . . brought in the district court of the United States . . . .  The court shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).

1   Commissioner adopting the Administrative Law Judge's ("ALJ") decision, which Plaintiff argues is:
2   (a) based on legal error or (b) not supported by substantial evidence.  The Commissioner concurrently
3   seeks summary judgment to affirm the ALJ's decision.

4          The Court finds the motions appropriate for submission on the papers and without oral
5   argument pursuant to Local Rule 7.1(d)(1).  After careful review of the moving and opposition papers,
6   the administrative record, the facts, and the law, this Court recommends the Commissioner's decision
7   denying disability benefits be **VACATED**, Plaintiff's motion for summary judgment be **GRANTED**
8   **IN PART**; Defendant's cross motion to affirm the ALJ decision be **DENIED** and this action be
9   **REMANDED** for further administrative proceedings.

10                                              **II.**

11                                   **PROCEDURAL HISTORY**

12          On September 26, 2005, Plaintiff[2] filed an application for Social Security Disability Insurance
13   Benefits alleging disability on June 8, 2001.  *See* Administrative Record ("AR") at 134-139.  Her
14   application was denied initially and also on reconsideration.  AR at 91-95; 98-102.  On March 22,
15   2007, a request for a hearing was timely filed.  AR at 105.  The ALJ submitted his decision on April
16   24, 2008, finding the claimant was not entitled to disability insurance benefits.  AR at 35.  The
17   decision of the Social Security Administration became final when the Appeals Council adopted the
18   ALJ's findings in a decision dated July 23, 2008.  AR at 10-13.

19          On September 23, 2008, Plaintiff filed the instant complaint pursuant to §405(g) of the Act in
20   order to obtain judicial review of a "final decision" from the Commissioner of the Social Security
21   Administration ("Commissioner") denying her claim for Disability Insurance Benefits ["DIB"].
22   Defendant filed an answer to the complaint on January 14, 2009.

23          On December 16, 2009, Plaintiff filed a motion for summary judgment (hereinafter "PM")
24   [Doc. No. 13] and Defendant filed a cross-motion for summary judgment (hereinafter "DM") on
25   January 15, 2010**.**  [Doc. No. 18.]  Both motions were found suitable for decision without oral
26   argument and taken under submission. [Doc. Nos. 17, 19.]

27   _____

28          [2]Claimant, Deborah L. Marshall, will be referred to herein as Plaintiff due to the instant
lawsuit.

# III.

## DISCUSSION

**1.      Legal Standard**

A claimant is entitled to disability benefits if, considering her age, education and work experience, she is unable to perform the work she previously performed and also the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920. **Step one** determines whether the claimant is engaged in "substantial gainful activity."  If she is, disability benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If she is not, the decision maker proceeds to **step two**, which determines whether the claimant has a medically severe impairment or combination of impairments.  That determination is governed by the "severity regulation" which provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520 (c), 416.920 (c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521 (b), 416.921 (b).  Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; [u]se of judgment"; "[r]esponding appropriately to supervision,

1  co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting." *Id.*

2

3      If the claimant does not have a severe impairment or combination of impairments, the
4  disability claim is denied.   If the impairment is severe, the evaluation proceeds to the **third step**,
5  which determines whether the impairment is equivalent to one of a number of listed impairments that
6  the Secretary acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§
7  404.1520 (d), 416.920 (d); 20 C.F.R. Part 404, Appendix 1 to Subpart P.  If the impairment meets or
8  equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the
9  impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the
10 **fourth step**, which determines whether the impairment prevents the claimant from performing work
11 she has performed in the past.  If the claimant is able to perform her previous work, she is not
12 disabled.  20 C.F.R. §§ 404.1520 (e), 416.920 (e).  If the claimant cannot perform her previous work,
13 the **fifth** and **final step** of the process determines whether she is able to perform other work in the
14 national economy in view of her age, education, and work experience.  The claimant is entitled to
15 disability benefits only if she is not able to perform other work.  20 C.F.R. §§ 404.1520 (f), 416.920
16 (f).

17      Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final
18 agency decision of the Commissioner.  42 U.S.C. § 405(g).  The scope of judicial review is limited.
19 The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial
20 evidence or is based on legal error."  *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432,
21 433 (9th Cir. 1988) (citing *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

22      Substantial evidence means "more than a mere scintilla" but less than a preponderance.
23 *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).  "[I]t is such relevant
24 evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting
25 *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a
26 whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.
27 *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing *Jones
28 v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985)).  If the evidence supports more than one rational

1   interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.

2   1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the

3   testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

4   1982).

5         Even if the reviewing court finds substantial evidence supports the ALJ's conclusions, the

6   court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the

7   evidence and reaching his or her decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

8   Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the

9   Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to

10  the Social Security Administrator for further proceedings. *Id.*

11  **2.      The ALJ's Decision**

12        After weighing the evidence from the administrative record and listening to the testimony of

13  Plaintiff and the experts, the ALJ determined in his April 24, 2008 decision Plaintiff retained the

14  following residual functional capacity:

15         "[L]ift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk

16             for about six hours and sit for about six hours in and eight hour workday; occasionally push

17             or pull with the left upper extremity; occasionally climb stairs and ramps, and occasionally

18             balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds;

19             occasionally reach in all directions with the left upper extremity; frequently handle and finger

20             with either hand and is limited to nonpublic, unskilled work with minimal contact with peers

21             and supervisors."

22  [Administrative Record ("AR") at 31.]

23        The ALJ's determination as to residual functional capacity follows the testimony of medical

24  expert Dr. John Morris [AR at 66-67] and was incorporated into the ALJ's hypothetical to the

25  vocational expert concerning Plaintiff's ability to preform past relevant work. Specifically, at the

26  February 29, 2008 hearing, the ALJ asked:

27         "[C]ould the claimant perform any of her past relevant work if I were to find, as a result of her

28             impairments, the claimant had a residual functional capacity consisting of the following

exertional and nonexertional limitations: This claimant would be limited to occasionally lifting 20 pounds, frequently lifting 10 pounds; standing and/or walking for about six hours in an eight-hour day' sitting about six hours in an eight-hour day; and would have push or pull limitations limiting her to occasional pushing or pulling with the left over – left upper extremity.  In terms of postural limitations, the claimant would be precluded from climbing ladders, ropes, or scaffolds; would be limited to occasional climbing of ramps or stairs, and occasional balancing, stooping, kneeling, crouching, and crawling.  In terms of manipulative limitations, she'd be limited to occasional overhead reaching with the left upper extremity, and frequent handling and fingering with either hand; and would have mental limitation limiting her to nonpublic, unskilled work with minimal contact with peer and supervisors."

[AR at 77-78.]

**3.      Vocational Expert's Testimony**

The vocational expert testified given the limitations identified in the ALJ's hypothetical, Plaintiff could not perform her past relevant work, but could perform the following light unskilled positions: (1) garment folder, (2) production inspector and (3) assembler.  [AR at 80-82.]

**4.      Plaintiff's Contention**

As the basis for her motion for summary judgment, plaintiff argues the ALJ failed to carry the Administration's burden at step five of the sequential analysis when he did not inquire as to possible conflicts between the testimony of the vocational expert and the Dictionary of Occupational Titles [DOT].

**5.      Conflict Between the Vocational Expert's Testimony and the Dictionary of Occupational Titles at Step Five of the Sequential Process**

At step five of the sequential evaluation, the ALJ must determine whether the claimant's impairment prevents her from performing any other substantial gainful activity.  *Parra v. Astrue,* 481 F.3d 742, 746 (9th Cir. 2007).  At this step, the burden is on the Commissioner to show the claimant may perform other types of work in the national economy, given the claimant's age, education and work experience.  *Lounsberry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  The ALJ can meet the burden of showing there is other work in "significant numbers" in the national economy that the

claimant can perform by referring to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, <u>or by eliciting the testimony of a vocational expert</u>. *Id.*  Plaintiff argues the vocational expert testimony relied on by the ALJ is inconsistent with the United States Department of Labor's Dictionary of Occupational Titles and is therefore unsupported by substantial evidence.

In order for the vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical based on medical assumptions supported by substantial evidence in the record reflecting each of the claimant's limitations. *Andrews v. Shalal,* 53 F.3d 1035, 1044 (9th Cir.1995). The hypothetical should be "accurate, detailed and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  Before relying on a vocational expert's testimony, an ALJ has an "affirmative responsibility to ask about any possible conflict between [the vocational expert's] evidence and information provided in the DOT." SSR00-4p, 2000 WL 1898704, at *4; *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 ("We address the question whether, in light of the requirements of SSR 00-4p, an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles.  We hold that an ALJ may not.")  If a vocational expert's testimony appears to conflict with the DOT, the ALJ must "obtain a reasonable explanation for the apparent conflict," SSR 00-4p, 2000 WL 1898704 at *4.  Where the vocational expert's testimony is not consistent with the information in the DOT, the ALJ must later "explain in the determination or decision how he or she resolved the conflict. . . . irrespective of how the conflict was identified." SSR 00-4p, 2000 WL 1898704 at *4;  *Massachi*, 486 F.3d at 1153 (stating that "[t]he procedural requirements of SSR 00-4p ensure that the record is clear to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT].").

The failure of an ALJ to perform the requirements set forth by SSR 00-4p constitutes procedural error. *Massachi*, 486 F.3d at 1153-54 & n.19.  Consequently, the reviewing court is unable to determine whether substantial evidence supports the ALJ's findings. *Id.; see also Travis v. Astrue,* 477 F.3d 1037, 1042 (8th Cir. 2007) ("This Court will not substitute its opinion for the ALJ's who is in a better position to gauge credibility and resolve conflicts in evidence.")  However, the Court may find the procedural error to be harmless if there was no conflict or if the vocational expert provided

1    sufficient support for his or her conclusion so as to justify any potential conflicts.  *Id* at 1154 n.19.

2         In this case, the transcript reveals the ALJ did indeed fail to ask the vocational expert if her

3    testimony was consistent with the DOT.  This was procedural error.  The error is not, however,

4    harmless as suggested by Defendant. [Doc. 18-1, 4:13-18.]  The Court has reviewed the DOT

5    guidelines and the vocational expert's testimony in response to the ALJ's hypothetical is indeed

6    inconsistent with the occupations listed in the DOT.  The ALJ posed the manipulative limitation of

7    "***occasional*** overhead reaching with the left upper extremity" in his hypothetical to the vocational

8    expert.  [AR at 78.] (emphasis added.)  In contrast, the DOT guidelines for Garment Folder indicate

9    reaching is a "constant" activity for that occupation.  [*See* Doc. No. 13-2, Exh. A to Plaintiff's MSJ

10   at p. 5.]  The DOT guidelines for Inspector indicate reaching is a "frequent" activity for that

11   occupation.  [*See* Doc. No. 13-2, Exh. B to Plaintiff's MSJ at p. 12.]    The DOT guidelines for

12   Assembler also indicate reaching is a "frequent" activity for that occupation. [*See* Doc. No. 13-2, Exh.

13   C to Plaintiff's MSJ at p. 20.]  The DOT makes no distinction between reaching with the left or right

14   hand in its guidelines.  Moreover, there is no indication in the ALJ's written decision that the ALJ was

15   aware of the conflict created with respect to the reaching capacity of Plaintiff's left extremity when

16   the vocational expert's testimony is compared to the DOT.  Consequently, the ALJ's written

17   determination provides no explanation as to how to resolve the conflict created by the vocational

18   expert's identification of potential occupations which the DOT indicates require constant or frequent

19   reaching but is silent as to handedness when the Plaintiff has significant restrictions placed on her left

20   extremity only.  As a result, the Court cannot accept the ALJ's determination which relies on the

21   vocational expert's testimony that there are positions in the national economy available to Plaintiff.

22   Without more, the Court has no way to determine whether substantial evidence supports the ALJ's

23   decision.

24   **6.  Remand Is Recommended to Remedy Procedural Error**

25        It is within the Court's discretion to decide whether to reverse and remand for further

26   administrative proceedings or to reverse and award benefits. *McAlister v. Sullivan*, 888 F.2d 599, 603

27   (9th Cir. 1989).  Remand is appropriate where additional proceedings would remedy defects in the

28   ALJ's decision, and where the record should be developed more fully. *Marcia v. Sullivan*, 900 F.2d

172, 176 (9ᵗʰ Cir. 1990).  In the instant case, remand is appropriate.  The ALJ erred in failing to ask the vocational expert whether her testimony conflicted with the DOT and in relying on that testimony without further explaining how any discrepancies could be resolved.  On remand, the ALJ must determine whether Plaintiff can actually perform the requirements of the positions identified given the limitations imposed by her left upper extremity.

## IV.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, **IT IS HEREBY RECOMMENDED** the Court **GRANT IN PART** Plaintiff's motion for summary judgment, **DENY** the Commissioner's cross-motion for summary judgment and **REMAND** this action for further administrative proceedings.

**IT IS ORDERED** that no later than **February 22, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court and served on all parties no later than **March 8, 2010**.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); see also Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: February 8, 2010

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge, U.S. District Court